UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TACOMA ENERGY, LLC,<br><br>                                    Plaintiff,<br><br>v.<br><br>RESIDENTIAL ENERGY SERVICES NETWORK, INC.;<br>DOES 1 through 25, inclusive,<br><br>                                    Defendant. | Case No.: 22cv438-LL-WVG<br><br>**(1) ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER;**<br><br>**(2) ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE;**<br><br>**(3) SCHEDULING PRELIMINARY INJUNCTION HEARING**<br><br>**[ECF No. 3]** |

Before the Court is Plaintiff Tacoma Energy, LLC's ("Plaintiff" or "Tacoma Energy") Ex Parte Application for Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction filed on April 4, 2022. ECF No. 3. The Court issued an expedited briefing schedule and Defendant Residential Energy Services Network, Inc. ("Defendant" or "RESNET") timely filed an opposition on April 13, 2022. ECF Nos. 6, 15. The Court took the matter under submission pursuant to Civil Local Rule 7.1(d).

Having reviewed the materials submitted and the First Amended Complaint (FAC), the Court **GRANTS** Plaintiff's Ex Parte Application.[1]

## I. BACKGROUND

According to the FAC, Plaintiff is a company that is known as a Rating Provider in the energy efficiency industry. ECF No. 13, ¶¶ 50–52. As a Rating Provider, it certifies and conducts quality assurance on individuals known as Raters who measure a home's energy efficiency. *Id.* ¶ 51. Plaintiff offers training, certification, quality control, and continuing education for home builders, homeowners, and energy raters. *Id.* ¶ 50.

Defendant organization sets standards and procedures for conducting the energy ratings of homes. ECF No. 15 at 8. As part of its role, Defendant accredits Rating Providers. *Id.* Defendant is recognized by the EPA as a Home Certification Organization (HCO), an independent organization that implements the EPA's Energy Star certification program for residential new construction that meets strict program requirements for energy efficiency. ECF No. 13, ¶ 36; ECF No. 3-5 at 11 (Ex. A), 14 (Ex. B). The IRS also recognizes Defendant in its rules for builders of new energy-efficient homes to qualify for a tax credit pursuant to 26 U.S.C. § 45L ("45L tax credit"). ECF No. 13, ¶¶ 62–67; ECF No. 3-5 at 54. To claim the tax credit, an eligible certifier must certify that the new home meets the specified energy efficiency requirements. ECF No. 13, ¶ 64, ECF No. 3-5 at 51. The IRS defines an eligible certifier as a person who "has been accredited or otherwise authorized

---

[1] Plaintiff requests that the Court take judicial notice of certain printouts from the websites of the U.S. Environmental Protection Agency (EPA), the Internal Revenue Service (IRS), the Department of Energy, and RESNET. ECF No. 3-5. The Court GRANTS Plaintiff's request for judicial notice as to these documents (ECF No. 3-5, Exhibits A–J) because they are public records and government documents found on reliable sources on the internet, and neither party disputes the authenticity of the websites or the accuracy of the information. *See* <u>Daniels-Hall v. Nat'l Educ. Ass'n</u>, 629 F.3d 992, 998–99 (9th Cir. 2010). The Court declines to take judicial notice of the remaining exhibits requested by Plaintiff because they were not used in this analysis.

1  by RESNET (or an equivalent rating network) to use energy performance measurement
2  methods approved by RESNET (or the equivalent rating network)." ECF No. 3-5 at 54.

3      On July 29, 2021, Defendant revoked Plaintiff's Rating Provider accreditation. ECF
4  No. 3-3 at 21 (Ex. 5). The letter stated that during a normal quality assurance review,
5  Defendant discovered Plaintiff reported over 10,000 ratings submitted by a single Rater.
6  *Id.* When Defendant asked Plaintiff for the list of Raters who performed its 2020 ratings,
7  the list included Raters who were not listed in the RESNET National Building Registry as
8  being certified under Plaintiff's providership. *Id.* Defendant also found a large volume of
9  duplicate ratings by Plaintiff that it deemed fraudulent because they were altered from the
10 original rating without a new field inspection and without the knowledge or consent of the
11 original Rater. *Id.* at 22. Plaintiff claims that on August 3, 2021, Defendant notified the
12 EPA, as well as Plaintiff's clients and Raters, about the revocation and barred Plaintiff from
13 accessing RESNET's building registry. ECF No. 13, ¶¶ 98–99. On August 4, 2021, Tacoma
14 notified Defendant of its intent to appeal the revocation. *Id.* ¶ 102. On August 13, 2021,
15 Plaintiff was granted an immediate stay of the revocation pending the appeal and permitted
16 to resume its activities as a Rating Provider. *Id.* ¶ 100; ECF No. 15 at 12.

17     In September 2021, Defendant's Ethics and Appeals Committee ("Appeals
18 Committee") met and denied Plaintiff's appeal. ECF No. 13, ¶¶ 102, 110. Plaintiff
19 subsequently gave notice of its intent to appeal the Appeals Committee decision to
20 Defendant's Ethics Appeal Panel ("Appeals Panel"). *Id.* ¶ 115. Plaintiff submitted its
21 second appeal in October 2021. *Id.* ¶ 122. In December 2021, two individuals chosen by
22 Defendant and two chosen by Plaintiff were appointed as the voting members of the
23 Appeals Panel. *Id.* ¶ 138; ECF No. 3-3 at 70 (Ex. 12). The appellant must receive a majority
24 vote by the Appeals Panel to prevail and the decision shall be final. ECF No. 3-3 at 71
25 (Ex. 12).

26     On March 4, 2022, the Appeals Panel hearing was held. ECF No. 13, ¶ 149. The
27 Appeals Panel has not yet issued a decision, but it has until April 29, 2022, to do so. ECF
28 No. 15 at 13.

1    In the FAC, Plaintiff list three causes of action: (1) declaratory judgment, (2) violation of common law fair procedure, and (3) violation of constitutional due process. ECF No. 13.

Plaintiff asks the Court to issue a temporary restraining order against Defendant pursuant to Rule 65 of the Federal Rules of Civil Procedure. ECF No. 3 at 2. Specifically, Plaintiff asks the Court to restrain Defendant from taking any further action to revoke Plaintiff's Ratings Provider accreditation. *Id.*

## II.   LEGAL STANDARD

The purpose of a temporary restraining order (TRO) is to preserve the status quo and prevent irreparable harm until a preliminary injunction may be held. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974). The legal standard for a TRO and a preliminary injunction is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The party seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits, (2) he will likely suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *City & Cty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 944 F.3d 773, 789 (9th Cir. 2019) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). In the Ninth Circuit, the court may apply a sliding scale test in which "serious questions going to the merits" and a balance of hardships that tips sharply toward the moving party can support the issuance of a preliminary injunction, as long as there is also a showing of a likelihood of irreparable injury and that the injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

"[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "The Court is permitted to consider inadmissible evidence in deciding a motion for a preliminary injunction." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 966 (C.D. Cal. 2016), *aff'd*, 869

F.3d 848 (9th Cir. 2017) (citation omitted). "While district courts may consider inadmissible evidence in the context of a preliminary injunction, this does not mean that evidentiary issues have no relevance to this proceeding. Such issues, however, properly go to weight rather than admissibility." *Id.* (citation omitted).[2]

## III. DISCUSSION

### A. Likelihood of Success of the Merits

Plaintiff argues that it is likely to succeed on its fair procedure claim because (1) Defendant wields substantial power as a gatekeeper for individuals and businesses who want to provide ratings for the Energy Star certification program and the 45L tax credit, and (2) Defendant violated its own standards during this revocation and appeal process. ECF No. 3 at 22–25. Defendant opposes, arguing that (1) the right to fair procedure does not apply to it and (2) it complied with its standards. ECF No. 15 at 21–23.

The legal analysis for a fair procedure claim brought pursuant to federal or California law is nearly identical. *Whittier Coll. v. Am. Bar Ass'n*, No. CV 07-1817 PA, 2007 WL 1624100, at *7 (C.D. Cal. May 7, 2007). "The California common law doctrine of fair procedure protects against arbitrary decisions by private organizations under certain circumstances." *Sound Appraisal v. Wells Fargo Bank, N.A.*, 717 F. Supp. 2d 940, 945 (N.D. Cal. 2010), *aff'd*, 451 F. App'x 648 (9th Cir. 2011). A private organization is required to provide fair procedure if the entity wields "substantial power that significantly impairs the affected individuals' ability to work in a particular field." *Id.* at 946. "The entity need not have monopolistic control over the plaintiff's right to practice his profession and the plaintiff need not establish a complete termination of his right to practice his profession."

---

[2] Defendant makes numerous evidentiary objections. It is not necessary for the Court to rule on admissibility due to the relaxed evidentiary standard for TRO proceedings. The Court has considered the likely admissibility of the evidence in determining whether Plaintiff demonstrated a likelihood of success on the merits for purposes of the TRO. Where the Court has expressly relied on evidence that is subject to an evidentiary objection, the Court has overruled the objection.

*Id.* When the right to fair procedure applies, the entity's decision making must be both substantially rational and procedurally fair. *Whittier Coll.*, 2007 WL 1624100, at *7 (citing *Pinsker v. Pac. Coast Soc'y of Orthodontists*, 12 Cal. 3d 541, 550 (1974)). The Court's review is deferential but includes an inquiry into whether the entity followed its own rules. *W. State Univ. of S. California v. Am. Bar Ass'n*, 301 F. Supp. 2d 1129, 1135 (C.D. Cal. 2004).

The Court finds that Plaintiff raises "serious questions going to the merits" on its claim for fair procedure.[3] First, the Court finds Defendant operates as a gatekeeper in its role as the accrediting body for Rating Providers who want to provide ratings for the Energy Star certification program for residential new construction or the 45L tax credit. Defendant is the only HCO recognized by the EPA to implement an Energy Star certification program for new residential construction. Similarly, neither party could name an "equivalent rating network" to RESNET for purposes of certifying a Rating Provider in the states where Plaintiff conducts business to participate in the 45L tax credit certification program. Thus, a Rating Provider such as Plaintiff requires certification by RESNET to participate in both the Energy Star and 45L tax credit certification programs. Because Defendant operates as a gatekeeper to Rating Providers, it is required to provide fair procedure. *Sound Appraisal*, 717 F. Supp. 2d at 946.

Having found that the right to fair procedure applies, the Court next finds that Plaintiff presents serious questions as to whether Defendant failed to follow its own rules. Defendant's Mortgage Industry National Home Energy Rating Standards ("Standards") includes Section 912.6.2 that states the Ethics Appeal Panel "shall comprise [of] four (4) members who have not been directly involved in the dispute and who will not be materially or directly affected by the result of the decisions made in the appeal." ECF No. 3-3 at 70 (Ex. 12). Plaintiff claims that Defendant's two chosen panelists, Roy

---

[3] The Court does not find that Plaintiff is likely to succeed on its claims for declaratory judgment and Fifth Amendment due process.

1  Honican and Nancy St. Hilaire, held executive and committee positions at RESNET during
2  2020 when most of the alleged misconduct occurred. ECF No. 3 at 16; ECF No. 3-2,
3  Declaration of John Johnson ("Johnson Decl."), ¶¶ 39–40. Plaintiff contends that they are
4  materially and directly affected by their positions on committees that oversaw accreditation
5  revocation procedures and standards, which are both at issue in Plaintiff's appeal. Johnson
6  Decl. ¶¶ 39–40. Plaintiff also claims that Mr. Honican and Ms. St. Hilaire are closely
7  connected with the energy ratings industry and Plaintiff's competitors. ECF No. 3 at 16;
8  Johnson Decl. ¶ 41. Plaintiff claims Mr. Honican is a Rater in a state where Plaintiff does
9  business, and if Plaintiff loses its accreditation Mr. Honican and his employer could see a
10 material and direct benefit. Johnson Decl. ¶ 41. Plaintiff claims Ms. St. Hilaire previously
11 worked for a direct competitor of Plaintiff's and is married to its president, and if Plaintiff
12 loses its accreditation Ms. St. Hilaire's husband's employer could see a material and direct
13 benefit. *Id.*

14  For the reasons above, the Court finds that Plaintiff has raised serious questions that
15 Defendant may not have followed its own rules and thus denied Plaintiff its right to a fair
16 appeal.

17  **B.  Irreparable Harm**

18  Plaintiff contends that if a TRO is not issued, it will lose its ability to conduct energy
19 ratings for the Energy Star program, the 45L tax credit, and other programs. Johnson Decl.
20 ¶ 53. It also claims it will no longer be able to certify, quality assure, or provide trainings
21 and education for Raters and will have to go out of business and cease employment for
22 over one hundred employees and subcontractors. *Id.* Defendant argues that Plaintiff will
23 not suffer irreparable harm because it does not need to be a Rating Provider to be able to
24 conduct energy ratings for 45L tax credits. ECF No. 15 at 26. Defendant also points to
25 Plaintiff's current use of another accredited Rating Provider to certify its Raters, which will
26 allow them to enter homes into Defendant's registry even if its revocation is upheld on
27 appeal. *Id.*

28

The Court finds irreparable harm is likely in the absence of an injunction to preserve the status quo. As a preliminary matter, the Court finds that the harm is not too speculative. Although the appeal decision is unknown, it will be released within days. The harm is real and final if Plaintiff's accreditation is revoked. *See W. State Univ. of S. California*, 301 F. Supp. 2d at 1137–38 ("Western need not wait for the axe to fall before seeking an injunction."). Despite Defendant's assertions, neither party can point to another HCO recognized by the EPA or an "equivalent rating network" to RESNET for purposes of certifying a Rating Provider for Energy Star and 45L tax credit programs in the states where Plaintiff conducts business. Plaintiff created a temporary fix for its Raters when its revocation was first announced by moving its Raters and Rating Field Inspectors to another Rating Provider. ECF No. 11-1, ¶ 5. This allows the other Rating Provider to quality assure the Raters and comply with Energy Star program requirements. *Id.* These new agreements required a one-year commitment and a monthly fee. *Id.* This does not appear to be a sustainable business model for a Rating Provider who is not accredited. Defendant argues that this arrangement was in place before the revocation, but the Court is not convinced at this early stage. The spreadsheets Defendant provided as evidence do not indicate that Plaintiff's Raters are under another Rater Provider, the meaning of the dates is unclear, and whether the dates were retroactively changed is unknown. ECF No. 15-1, Declaration of Steve Baden ("Baden Decl."), ¶ 52; ECF No. 15-1 at 175–77 (Ex. G).

### C. Public Interest

The Court finds the public's interest in fair and accurate accrediting is served by adherence to due process protections. The public also has an interest in the availability of accredited Rating Providers to support the energy ratings industry and promote energy efficient homes.

### D. Balance of Hardships

The Court finds the balance of hardships tips sharply toward Plaintiff. The loss of its accreditation would be final and cause immediate damage to Plaintiff's business and

reputation. A TRO to preserve the status quo will merely delay enforcement of a decision by Defendant.

IV. **CONCLUSION**

For the reasons stated above, the Court **GRANTS** Plaintiff's ex parte application for a temporary restraining order as follows:

1. Defendant may continue its appeal process to the decision-making conclusion if it wishes, but the status quo is otherwise preserved. Defendant and its agents, assigns, employees, officers, directors, attorneys, and representatives are temporarily restrained from implementing, publicizing, or otherwise acting on any final decision to revoke Plaintiff's accreditation.

2. Defendant is **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue pursuant to Federal Rule of Civil Procedure 65 that enjoins Defendant from implementing, publicizing, or otherwise acting on any final decision to revoke Plaintiff's accreditation. Defendant must file a written response, if any, on or before **April 22, 2022**. Plaintiff may file a reply to Defendant's response on or before **April 28, 2022**.

3. The Court sets a preliminary injunction hearing for **May 6, 2022, at 10:00 a.m. PST** by Zoom video conference. Instructions will be emailed to the attorneys of record.

4. Due to the nature of the issues in this action, the Court dispenses with the bond requirement contained in Federal Rule of Civil Procedure 65(c).

///
///
///
///
///
///
///

5.     This temporary restraining order is effective on the date and time of filing and remains in effect until the date and time of the preliminary injunction hearing specified above, absent further order from the Court.

**IT IS SO ORDERED.**

Dated:  April 18, 2022

Honorable Linda Lopez
United States District Judge